UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

Civil Action No. 14-77-HRW

ALANA D. McANINCH,                                                         PLAINTIFF,

v.                   **MEMORANDUM OPINION AND ORDER**

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for disability insurance benefits on March 10, 2011, alleging disability beginning on February 28, 2011 due to "COPD, sleep apnea, fibromyalgia, severe migraines, high blood pressure, depression and bipolar" (Tr. 207). . This application was denied initially and on reconsideration. On April 2, 2013, an administrative hearing was conducted by Administrative Law Judge Jonathon Stanley (hereinafter "ALJ"), wherein Plaintiff testified. At the hearing, Martha R. Gross, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

On April 19, 2013, the ALJ issued his decision finding that Plaintiff was not disabled. Plaintiff was 47 years old at the time she allegedly became disabled on February 28, 2011, and 48 years old at the time she last met the special earnings requirement for DIB (Tr. 177). Plaintiff has the equivalent of a high school education (GED) (Tr. 36), and previously worked as a collections clerk, home health aide, production line welder, fast food worker, and welder assembler (Tr. 60-61).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date and her date last insured. (Tr. 16). After a review of the record, the ALJ found that Plaintiff had severe physical and mental impairments, but that Plaintiff's complaints of disabling limitations were not fully credible (Tr. 22-23), and that Plaintiff had the residual functional capacity to do light exertion work with additional postural, environmental and mental limitations (Tr. 20; Finding No. 5). The ALJ relied on Plaintiff's continuing capacity for light exertion, unskilled work (the least complex type of work) in finding that she was not disabled   The Appeals Council denied Plaintiff's request for review and adopted the

2

ALJ's decision as the final decision of the Commissioner on.

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 11 and 12] and this matter is ripe for decision.

## II. ANALYSIS

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

On appeal, Plaintiff contends that the ALJ improperly weighed the medical evidence of record. The ALJ was faced with conflicting opinions from an examining psychologists, Harwell Smith, Ph.D. and Meghan Shapiro, M.A., state agency psychologists, H. Thompson Prout, Ph.D.

3

and Ed Ross, Ph.D. and Casey Smith, a Nurse Practitioner.

In June 2011, was seen by Meghan Shapiro, M.A., with oversight by Harwell F. Smith, Ph.D., for a consultative examination that included intelligence testing, a clinical interview, and behavioral observations (Tr. 270-276). Their examination of Plaintiff resulted in findings of normal appearance, psychomotor activity, speech, thought processes and content, as well as a determination that she had a fair ability to perform activities of daily living, understand and remember two-step instructions, and sustain concentration and persistence on tasks; her ability to respond to the pressures of a day-to-day work setting was likely poor to fair (Tr. 270-276). Her ability to interact socially and to tolerate stress was deemed poor. (Tr.275).

In early 2013, Plaintiff was seen by Nurse Practitioner Casey Smith, at Central Kentucky Behavioral Health relative to complaints of depression and anxiety (Tr. 354-355). Nurse Smith noted that her general appearance, psychomotor activity, speech, thought processes and content, and memory was within normal limits. Nurse Smith reported that Plaintiff was alert, with fair insight and judgment (Tr. 355). Nevertheless, in March 2013, Nurse Smith completed a medical source statement as to Plaintiff's mental ability to perform work-related activities that indicated that she had no useful ability to deal with the public, and was seriously limited in her ability to relate to co-workers, use judgment, interact with supervisors, deal with work stresses, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Nurse Smith did opine that Plaintiff had a satisfactory ability to understand, remember and carry out simple job instructions (Tr. 358-359).

During the administrative proceedings, state agency psychologists, H. Thompson Prout, Ph.D., and Ed Ross, Ph.D., reviewed Plaintiff's record and concluded that Plaintiff could perform work

4

involving simple repetitive tasks, a low stress work environment, with no more than frequent contact with the general public (Tr. 94-96, 110-112).

None of these individuals is from a treating source. Therefore ,no special deference is presumed. Rather, the weight afforded to an opinion from a non-treating source depends upon the factors set forth in 20 C.F.R. § 416. 927:

> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
>
> (I) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
>
> (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source

5

has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416. 927 ( c).

In his decision, the ALJ assigned greater weight to the opinions of Dr. Prout and Dr. Ross. Despite the rather extensive of mental limitations suggested by Dr. Smith and his associate Ms. Shapiro, their examination of Plaintiff resulted in findings of normal appearance, psychomotor

activity, speech, thought processes and content, as well as a determination that she had a fair ability to perform activities of daily living, understand and remember two-step instructions, and sustain concentration and persistence on tasks; her ability to respond to the pressures of a day-to-day work setting was likely poor to fair (Tr. 270-276). As for Ms. Smith, as a Nurse Practitioner, she is not an acceptable source for diagnoses and the ALJ is not required to assess her opinion with regard to Plaintiff's ability to work.

To the extent that Plaintiff suggests that this evidence is open to another interpretation that favors her claim, the Court declines to revisit the evidence in this fashion. Even if substantial evidence exists to support Plaintiff's claim, the Court should still affirm the Commissioner's decision because it is supported by substantial evidence. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed).

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 3rd day of March, 2015.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge

Henry R. Wilhoit, Jr., Senior Judge

7